NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 22 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LIZBETH GONZALEZ
RODRIGUEZ; A.E.A.G.; J.S.G.,

No. 24-3347

Petitioners,

Agency Nos.
A246-627-467
A246-627-468
A246-627-469

v.

PAMELA BONDI, Attorney General,

MEMORANDUM[*]

Respondent.

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 10, 2025[**]
Seattle, Washington

Before: McKEOWN, PAEZ, and SANCHEZ, Circuit Judges.

Lizbeth Gonzalez Rodriguez and her two sons, natives and citizens of

Mexico, petition for review of a decision from the Board of Immigration Appeals

("BIA"), dismissing her appeal of an order from an Immigration Judge ("IJ")

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

denying asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Our review is limited to the BIA's decision except to the extent that it expressly adopts the IJ's opinion. *Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021). Exercising jurisdiction under 8 U.S.C. § 1252(a), we grant the petition for review and remand to the BIA for further proceedings.

1. The agency's denial of asylum and withholding of removal was based on legal error. In determining that Petitioners did not establish past persecution, the BIA stated that a persecutor's "will or ability to carry out the threat relates to the . . . fear of future persecution, and not the past persecution finding." This misstates our law.

"Threats are relevant to the past persecution analysis." *Sharma v. Garland*, 9 F.4th 1052, 1062 (9th Cir. 2021). This is because threats themselves can be "so menacing as to cause significant actual suffering or harm." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (citation omitted); *see Corpeno-Romero v. Garland*, 120 F.4th 570, 578–79 (9th Cir. 2024). "What matters, in assessing the sufficiency of the threat to establish persecution, is whether the group making the threat has the will or the ability to carry it out—not whether it is, in fact, carried out." *Aden v. Wilkinson*, 989 F.3d 1073, 1083 (9th Cir. 2021) (internal quotation marks and citation omitted) (analyzing past persecution). Indeed, on multiple

2                                                                 24-3347

occasions, we have analyzed a group's will or ability to carry out a death threat to determine whether a death threat is specific and menacing and credible so as to constitute past persecution. *See, e.g.*, *id.*; *Corpeno-Romero*, 120 F.4th at 578–79; *Duran-Rodriguez*, 918 F.3d at 1028; *Flores Molina v. Garland*, 37 F.4th 626, 634–35 (9th Cir. 2022); *Fon v. Garland*, 34 F.4th 810, 815 (9th Cir. 2022). The BIA therefore committed legal error.

The BIA did not provide an alternative, independent basis for its asylum and withholding of removal decisions. The BIA's determination that Petitioners failed to establish a well-founded fear of persecution is not independent of its past persecution determination. The burden of proof regarding Petitioners' well-founded fear of persecution depends on its past persecution determination. *See Singh v. Whitaker*, 914 F.3d 654, 659 (9th Cir. 2019); 8 C.F.R. § 1208.13(b)(1). Accordingly, we remand Petitioners' asylum and withholding of removal claims to the agency so that it can reconsider these claims under the correct legal framework. *See De Souza Silva v. Bondi*, 139 F.4th 1137, 1145 (9th Cir. 2025).

2. We also remand Petitioners' CAT claim. First, the BIA mischaracterized Petitioners' arguments about their risk of torture as "general arguments." Unlike the petitioner in *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010), who submitted only "generalized evidence of violence and crime in Mexico," Petitioners do not rely on generalized country conditions evidence showing a

random risk of violence. Rather, they have presented evidence that they specifically are likely to be killed because of their involvement in anti-cartel community policing efforts and their decision to stop paying the cartel. Evidence that other similarly situated individuals in Petitioners' community have been murdered, combined with evidence that Petitioners have had direct confrontations with cartel members before, is not generalized but particularized evidence that the BIA appears not to have considered.[1] *See Parada v. Sessions*, 902 F.3d 901, 914 (9th Cir. 2018) (remanding where, "in violation of our precedent and CAT's implementing regulations," the BIA "ignored pertinent evidence in the record").

Second, the BIA held that the IJ appropriately found "no evidence" in the record that the Mexican government would acquiesce in torture. In doing so, the BIA "fail[ed] to mention highly probative evidence." *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011). As Gonzalez Rodriguez credibly testified, she filed a report with the state prosecutor's office regarding her employees being beaten, tied up, and left on the side of the road, and never heard back from that office about her report. Additionally, "[e]vidence showing widespread corruption of public officials—as the record reveals here—can be highly probative." *Parada*, 902 F.3d

---

[1] For example, Petitioners presented evidence that multiple members of the community policing organization that Gonzalez Rodriguez and her husband supported were murdered, and that another store owner in the neighborhood, as well as a cousin and her employee, were murdered after they stopped paying fees to the cartel.

at 916. Ample record evidence indicated corruption in Mexico's local police forces and in local government, including reports that twelve mayors in Petitioners' home state were linked to organized crime. The 2022 State Department Report on Mexico also stated that "[i]mpunity and extremely low rates of prosecution remained a problem for all crimes," and a "majority" of crimes, including torture, carried out by transnational gangs and narcotics traffickers "remained uninvestigated and unprosecuted." The BIA did not meaningfully consider any such evidence.

Because neither basis for the BIA's CAT decision can stand, *see Cole*, 659 F.3d at 771–72, we remand Petitioners' CAT claim to the agency for reconsideration.

**PETITION GRANTED and REMANDED.**